324-0248, Kenneth Teppel, Eppley v. Board of Trustees of the Bolingbrook Police Pension Fund, Appellant. Mr. Goodloe, you may proceed. All right. Thank you very much. Good morning, your honors. May it please the court. My name is Jeff Goodloe. I represent the defendant, Appellant, the Bolingbrook Police Pension Board. The Pension Board comes before the court this morning asking the court to reverse the trial court's order and to affirm the Pension Board's which excluded the payment of certain compensation called pickups from the plaintiff's salary attached to rank for pension purposes. There are a couple issues I'd like to hit on. The first is, very briefly, the standard of review. It's the Pension Board's position that the trial court used the incorrect standard of review when analyzing this case. The trial court affirmed, based on the reasons that were set forth by the Appellee in this matter, and the Appellee argued that this case involves a de novo question or a question of law subject to de novo review. It's the Pension Board's position, briefly, that it is a mixed question of law, in fact, subject to the clearly erroneous standard of review. And, therefore, the court should affirm the Pension Board's decision unless it's left with a definite and firm conviction that a mistake was made in this case. The Pension Board does not believe a mistake was made in this case and that the Pension Board's decision is not clearly erroneous and that evidence supports the Pension Board's decision here. You do agree there's no disputed issues of fact, right? Well, I think that there are some disputed issues of fact in terms of... I think we all agree that there were pickups, but in terms of whether it's a wage or not a wage and the meaning of a wage, I think there are... Those are legal questions. My question is, are there any disputed issues of fact? I don't believe that there are disputed issues of fact, Your Honor. All right. Okay. I like to address whether the pickups are salary attached to rank for pension purposes. And it's the Pension Board's position that the pickups are not salary for pension purposes because they're not compensating the plaintiff for services rendered in his position as, I'll say, police chief. I think it was director of public safety. Rather, the actual character of the compensation is that it's a reimbursement for what were otherwise the plaintiff's legal obligations to make a 9.91% contribution to the pension fund, as well as a contribution to the retiree healthcare fund. And the evidence... Would you agree that it's a fixed number, though? I would not agree with that, Your Honor. No, I do not. It's just based on... We know that he has to pay a certain percentage of his salary, know what his salary is, so we know what the pickups are going to be, right? We actually don't know that. It's not fixed within the meaning of the pension code. So, fixed has a definition, which means payments in a predetermined amount, which can be determined through an examination of the appropriations ordinance, as well as the plans or agreements established in salary. And when you look at... Well, this is a predetermined amount, right? It is not predetermined within the meaning of the pension code. So, the pickup provision says that he will receive as wages an amount equal to his or her employee contribution into the appropriate pension fund. But just looking at that, what does that mean? Is that 9.91% of base pay? Is that 9.91% of base pay plus whatever was contributed to the retiree health fund? And it took a lot of calculations, but it's 9.91% of the combination of not only base pay, but the retiree insurance pickup, as well as the pension pickup. So, what you have to do is you take all three of those numbers annually, you add them up and take 9.91% of that to come up with what the pension pickup number was. And what the pension board realizes that even when that's done, it does not equal the pension pickup of $17,154.54. It's not in a predetermined amount. So, it's close, but it doesn't match. And therefore, it's not predetermined and nobody can look at these documents and say, oh, this is what the pension pickup is going to be. So, it's not fixed within the meaning of the pension code. I understand that one can say, well, it's whatever is contributed into the pension fund, that's what the pickup is going to be, or a combination of these three things, but adding them all up, it doesn't match that. And your honor, it can never match under any circumstance because mathematically, anytime that a pickup is paid, there's a contribution withheld. And anytime there's a contribution withheld, there's a pickup that's paid. And anytime a pickup gets paid, a contribution gets withheld. It just keeps going on and on. So, this is exactly what the finance director testified that it is. It's really a projection. It's not a guess, but it's a projection. We're seeking to make it match, but at the end of the day, it doesn't match. And for that reason, it's certainly not fixed under the pension code. Another problem with whether it's fixed under the pension code is this, it's provided for under the personnel manual, chapter seven, which is entitled fringe benefits. And it specifically says under that provision that benefits under the plan described, which include the pickups, will be paid only if the administrator decides in his or her discretion that the applicant is entitled to them. I think it's at page 1612 of the record. So, that's no different than the holiday pay that was at issue in Hanover Park, where the second district said, this is not fixed within the meaning of the pension code. This is its compensation. The argument by the plaintiff is that it's for services rendered as public safety director. But the actual legal character of this compensation, when you strip all the words away, is that it is a reimbursement for what was estimated to be likely those contributions into the pension fund and the retiree health care fund. And they can unilaterally be taken away at any time, unlike base pay, or longevity pay, or pensionable holiday pay, those things that actually constitute pensionable salary within the meaning of the pension code. And I think the fact that it can be unilaterally taken away at any time takes, you know, just really blows it out of the water in terms of whether it's fixed compensation within the meaning of the pension code. Good note, when you say it can be unilaterally taken away, where do you find the authority for that statement? From the personnel manual itself that says that it's up to the administrator at his or her discretion to determine if the applicant is entitled to this. So if the applicant, you know, if the administrator determines at some point that the plaintiff is not entitled to the pickups, it appears from this section that the administrator could take it away. And the administrator is? Would be the village administrator, I would imagine, under the code, so to speak. Right, right, correct. So no, we did not believe that this is a fixed compensation within the meaning of the pension code. And we also don't. One question, the administrator can't, he doesn't have the discretion, he can't just decide, you know what, he has to have a factual basis and under, you know, that comports with what's in the code, what's in the manual. He can't just, it's not like it's, he could just do that without a legal basis, correct? I'm not certain, your honor. I mean, the only language that we have in the personnel code is the language that I cited to the court. And it seems as though that administrator has the discretion to say whether the plaintiff would be entitled to those pickups or not. So, I mean, it's possible they could just say, we're going to take these away or you're not going to receive this. And if that's the case, then it's certainly not fixed within the meaning of the pension code, unlike base salary or longevity or something like that. Well, can I ask you this one more question about that concept of being fixed? The amount that is going to be added to their salary based on these two pickups, that's determined before the fiscal year starts, right? I mean, when you get your annual bump, you get your annual, it's done by then. I understand it's a little bit of a math problem, but that math problem is done and it's approved. And then it is fixed in my, I'm going to use fixed in my own common, you know, lay person's terms. But it's determined before you start getting your paychecks and it's correct? It would be because they would be able to say, okay, well, this is the 9.91% of the contribution. This is the percentage that's going into the retiree healthcare. So yes, from that perspective, it is determined. I mean, it's a number that one can come up with. It doesn't match what the testimony bears out. I mean, it doesn't equal what it's supposed to and it never will. But you are correct, Your Honor, that mathematically, like the finance director did, she testified, I can do a projection to determine what the pickups are going to be and then pay him the pickups, make sure that he receives those pickups. And that's what occurred. It doesn't change the fact in terms of whether the compensation is salary within the meaning of section 3-125.1 of the pension code and the applicable administrative code provisions in 4402. And even though it's being paid as a wage and it's included in the appropriations ordinance, that does not make the compensation salary for pension purposes within the meaning of the pension code. The court instructed in Holland that simply because compensation is appropriated for and budgeted for, that doesn't make it salary. And there was never any intention by the legislature to remove in defining salary, the general definition that it is compensation, it's fixed compensation for services rendered. And the court in Park Ridge said, you don't look at necessarily the terms that the parties use in defining the compensation. So simply because we're paying it as a wage or we call it a wage, that doesn't make it salary for pension purposes. Rather, the courts have said, you look at the actual legal character of what is being paid as opposed to how the parties are defining them and the words that they're using to describe them. And when you strip this away and look at what's occurring here, this is not a compensation for services rendered as the public safety director. This is an additional payment, which is being used to reimburse the plaintiff dollar for dollar for the contributions that he otherwise would have made to the pension fund in the retiree health fund. Simply appropriating for that doesn't make it salary for pension purposes because everything has to be appropriated for, everything has to be budgeted for. So there has to be a deeper analysis that's done here. And the evidence in the record supports the pension board's conclusion here that this is a reimbursement as opposed to a services rendered as the chief. We have the testimony from not only the finance director, but also from the plaintiff himself acknowledging that simply because something's budgeted for, that it's taxed, and it's labeled a wage, doesn't make it salary for pension purposes. The pickups here are found in the fringe benefit section, entitled fringe benefit of the personnel manual. And in the personnel manual, even though this is being paid as a wage, it defines the compensation as non-wage compensation provided to employees in addition to their regular rate of pay. So it's, you know, the village is free to pay the pickup and to say, hey, we're giving you a really good deal here in that you as the chief, you're not going to have to pay your legal obligated cost of the 9.91% into the pension fund. We're going to reimburse you for that. That's perfectly fine. But then to take it and withhold contributions on it and say that it somehow gets added on top of salary attached to rank because it's for services rendered as a chief, the evidence doesn't bear that out. And the Department of Insurance, Mr. Thielen, who's the, I think the attorney for the public pension division of the Department of Insurance, came in and testified. And he testified pursuant to the advisory services which are authorized by the and said, you know, in viewing this, it's the department's opinion that this is a reimbursement for what were otherwise his legal obligations. This is not appropriate salary attached to rank for pension purposes. Contributions should not have been withheld. They should be refunded. And these amounts should be excluded from salary attached to rank for pension purposes. And, you know, the pension board and I think courts are supposed to afford substantial weight to that unless it's arbitrary or capricious or contrary to statute. But here, it's not contrary to the statute. Looking at the actual legal character of this compensation, it is not compensation for services rendered as chief. It's a reimbursement. And it's certainly not fixed within the meaning of the pension code if it can be taken away and it's up to the discretion of the village administrator as to whether to give it. And it's listed as a fringe benefit. So for those reasons, Your Honor, we would ask that the court reverse the trial court and affirm the pension board's decision setting the plaintiff's salary attached to rank at $154,262.50. Any follow-up questions for Mr. Goodloe? Not at this time. All right. Thank you, Your Honors. Mr. Goodloe, you'll have an opportunity in reply. Mr. Marconi. Good morning. May it please the court, Mr. Goodloe. So stepping back from this case and looking at it, this is not something new with regard to Mr. Tepl. This board has been considering these pension pickups and retiree pickups for at least 15 years. It might have been challenged, I think, in 05-06 before Judge Petrangaro, who issued a decision, which, by the way, she reviewed under a de novo standard of review. You agree that that's of no consequence or relevance to us what Judge Petrangaro did? Absolutely. Absolutely. And I put that in my brief that it's not binding authority in any way. But going back to that, the board has had the same accountants, Lauterbach and Amon. They've had the same attorneys. And they've been doing this way until all of a sudden Mr. Tepl. And that's when you have this intervener who comes in, Mr. Branken, who was a trustee on this pension board. And it had actually voted in favor of awarding the same pensionable salary scheme to the two prior chiefs, Ross and McCarthy. So this is nothing new. I think it's important, and it shows the intent of the village, that in the manual, they specifically state that this is as wages. With regard to reimbursement, if you look at under the same heading where it talks about benefits to department directors, when something is a reimbursement, they state it's a reimbursement. For example, under the same section, department directors will be reimbursed for services and products that improve or correct vision. They'll be reimbursed for prescription co-pays. That's explicit. So this is not a reimbursement. And you know that for several reasons. Number one, they don't declare it a reimbursement within that fringe benefit chapter. You have the finance... Mr. Marconi, don't they determine it as a fringe benefits? But they define fringe benefit as forms of non-wage compensation, such as hospitalization insurance, holiday leave, paid vacation. They don't put in their pension pickup. Now, should it have gone in this section, chapter, I should say? Probably not. I mean, no one's thinking about it back whenever this was drafted. I don't even know when. But it's certainly within this specific section of the pickup, they call it wages. They don't call it a reimbursement. When it is a reimbursement, they call it a reimbursement. Their manual is internally inconsistent on this, that this doesn't fit in the section that they put it in. It doesn't fit in this chapter. And maybe because the benefits to department directors was in this chapter and there was other fringe benefits that were given to benefit directors, such as the reimbursement I just talked about, that was put in this section rather than put it somewhere else in the handbook. But I don't think that's determinative. And I don't think that shows the intent of the village to treat it as a fringe benefit as they define it, because they define it as non-wage. They specifically say this is wage. So it's 180 degrees from the way they define a fringe benefit within the handbook. You had the finance director, Rosa Kojulun, testify that she's been doing this for 15 years and it is not a reimbursement. That's why that's so important, the finance side of this as opposed to the pension side of this. The people that work and do the books for the city as opposed to the people's pension who is being protected by the pension board. Because that's where I think the appropriations ordinance comes in, because it seems the common theme in all these cases talk about whether or not the money is appropriated for. And I think in this case, the finance director explained how she arrived at this quote-unquote pension pickup and that she uses a computer program and it's based off the base salary where she kind of projects. And then I think she says those have to match. And then the employee has to pay the pension contribution based upon the total salary and is taxed on it. But it's not a reimbursement. Reimbursement is easy. That just means I'm going to pay my pension contribution and I'm going to get a check back in the amount of whatever that pension contribution was and you're going to be a reimbursement, still would be income. So, and this is where- Let me interrupt you, Mr. Marconi. So, are you telling me that either your client or the city paid money into the pension fund for that 9.91% of the pickup? After the total compensation is calculated. So, that would be- Of the 176 or of the 154? 154 plus what she used as the pension pickup. So, those two figures would equal your compensation. Based on that compensation, you would pay that 9.91%. And that's why the pension board in their briefing say, well, he's been overpaying. All of these people have been overpaying then all of these years. Because they've been paying the 9.9% is not based on the base salary. Right? So, what they're doing- To answer my question, where do I find that in the record, Mr. Marconi? I know that Mr. Tepple testified to it. And I know what was in the briefing of Mr. Goodlow, that they would be eligible for a refund of those extra contributions that were made over and above the 9.91% that they should have been paying. I don't know if it was in the testimony, but I know it was in the briefing. What you're saying is Rosa would have been taking out not just for the 150 something amount. It would have been, she would have been taking out pension contributions for the entire amount. Yes. And that's why she said they have to use a computer program to kind of project to match at the end. You know, you take this gross salary and then you take the 9.91%. And that's how she arrived at that. You know, and again, I mean, you know, you have Lauterbach and Amen as the accountants. Mr. Tepple didn't put that amount down on his application. Rosa, the finance director, didn't put it down. Who put it down? It would have to be either the pension board or Lauterbach and Amen. It just didn't appear in this application for retirement. I think the other confusing word is also pickup, because that's really a legal term of art in the pension code. And I think you see it in certain pensions. I know pickup part of the statutorily required pension contribution. For example, you know, I know when I was at the Board of Ed, you know, 8.5% was what we would have to contribute statutorily, but the board would contribute 7%. That would reduce your salary for that pay period. So you're paying less tax on it. But later on, when you retire, you'd be paying that tax. Similar to like SEPA count of 401k, you know, those are pre-tax deductions. So it would help the employee basically on their income tax during that period of time. And I think Allison Barrett testified to that. She was the person for Lauterbach and Amen saying normally it's deducted on a pre-tax basis. So that's really what a pickup is. I don't know why or who drafted this or why they came up with the word pickup, but I think it makes the case a little bit confusing because it's not truly a pickup as a term of art used in the pension code. So at the end of the day, you have this, definitely you know what the village is trying to do. They're trying to increase the compensation package for these department heads. Then the question with what Mr. Goodlow was getting into is, all right, does it fit within the definition of salary under the pension code? And does it fit within the definition under the Illinois Administrative Code? And I think the pension code is very specific that it would not include things like overtime pay, holiday pay, bonus pay, merit pay, but it doesn't say anything about this type of a payment. It is certainly fixed because if you go, and I think in the hearing we marked all of Mr. Temple's pay stubs and introduced them, they're all basically the same. You know every single pay period, what's going to be deducted because of the fact you know what his base salary was and then the finance director came up with the amount that would have been added to that and then it was done. You know this wasn't something that was fortuitous or you know because of something, an overtime or something they did. It was predetermined. And I think that that's shown when in the testimony and I think it was under cross-examination, they said well you know this $183,000 is too high. It doesn't match. And I think the finance director explained that saying you know that was next year's budget. We are projecting for next year and we have the chief and we have the deputy chief. So that amount included a two and a half percent pay raise and then she specifically stated I believe that the car allowance of like six grand is not, everyone agrees, that's not pensionable and is not part of that compensation package. And that's why that figure was higher than the actual figure which Mr. Tepl retired at, the $173,000 which the board came up with initially. And then all of a sudden when Brankin filed his petition to intervene, they went through a year of hearings. They suspended or they wouldn't pay Mr. Tepl any pension whatsoever for over a year while they conducted hearings on this. Because you got to remember too there was the other issue that Brankin raised where they said you re-entered service. And so we had a lot of testimony and we had a lot of documents admitted into evidence on that. Now at the end of the day that's not an issue before the court because the board did not agree that he re-entered service because he became the co-administrator for the village of Bolingbrook. Then it only became the salary. Mr. Goodlope brought up the Department of Insurance, Mr. Mark Thielen. And you got to remember, number one, they don't issue any advisory opinions anymore and they haven't done so, and I can't remember what it was, like 2018 or something. So he said that he was doing advisory services. You would think that if somebody's going to ask for advice it would be the Pension Board. How do we handle this? But it wasn't in this case. It was former trustee Brankin who sent a letter and an email to Thielen and then in that called this fringe benefits, called this reimbursement. And then in cross-examination during the hearing Thielen said, no, I never looked at the appropriations ordinance. I never looked at the Calcagno decision. I don't know what they were to do. And I put some of that globally in my briefs, but he didn't have a firm grasp of what was going on. He wasn't allowed to come in and look at all the board's documents and try to do a thorough analysis of whether or not this would be pensionable salary. He was called as a witness by the intervener and led by the intervener, kind of what the intervener wanted to get out of this case. And that would be to lower Mr. Tupple's salary. The same with Alison Burnett. She didn't receive this information. She didn't look at the appropriations ordinance. She didn't know about the case. She even said that Lauterbach and Amon was not offering an opinion. It was their own opinion. So to rely on that, I think, is wrong, clearly. And again, this board is not, I mean, this board is very familiar with this scheme and has been doing this with their attorneys and accountants for a very long time. So there was something else at play here that wasn't part of the record to go after Tupple and go after his pension, go after his pension, period. They didn't want him to have a pension. But at the end of the day, the facts are the facts. There's no facts in dispute. The law is clear. It's not a reimbursement and it's certainly not a fringe benefit as defined as non-wage in the personnel manual. And if you have any questions, I might have a minute left. Any questions? All right. Thank you very much for your time. Thank you, Mr. Marconi. Mr. Goodlaw. Mr. Goodlaw, you're muted right now. Sorry, your honor. Thank you very much. I apologize. Before you get a chance to get a word out, I got a question for you. Yes, sir. Mr. Marconi said that they did in fact take pension contributions out of the pickups. Do you agree with that? Yes or no? Yes. Okay. Yes. So the record supports the fact that pension contributions were paid. Why would pension contributions be paid if this was not going to be pensionable income? So it's not the pension board as a separate legal entity that withholds pension contributions on compensation. It's the municipality, which again is separate from the pension board, which is the one that's withholding those contributions. So they withhold the contributions. They remit them to the pension fund. It's the municipality that reports what they believe is pensionable salary every year to the pension board for purposes of filing the annual statement. So it was the municipality that withheld the contributions. And it wasn't until the issue was raised in this case by Brank and the intervener that it then triggered the pension board and its prior council to have all of these hearings to try to figure out what was going on and whether these pickups should appropriately be considered pensionable salary for purposes of calculating the plaintiff's pension. So at the end of taking all of that evidence, it was the pension board's conclusion, no, the pickups are not properly pensionable salary. Therefore, the contributions should not have been withheld on those amounts. And if the court reverses, then the plaintiff would be entitled to a refund of those contributions that were erroneously withheld by the village on that compensation. That's not- Is that what the board found? Absolutely. I mean, the board would have to refund those contributions back to- Did they find that? Did they offer that to Mr. Marconi's client? Your Honor, I'm not sure if that was part of the record. I know it's part of the pension board's brief that we indicated that if the court reversed, he would certainly be entitled to a refund of those contributions. I mean, contributions are erroneously withheld by municipalities on compensation. That's not pensionable salary. That's not an uncommon occurrence. And when that happens, then it gets corrected and there's a refund of those contributions. The plaintiff says- But that's not in the record, Mr. Goodlaw. That's an observation you've made over your professional career? That's correct, Your Honor. Yes. And you do agree that everyone else was treated the way that Mr. Marconi described, and this is the first time that the fringe or the pickup was not included as part of pensionable salary? That's correct. There's the CalCagno decision, and I came into this- The pension board had already held the administrative hearings and rendered its decision, and then I came into this. So it's hard for me to speak as to how it transpired, but there's the CalCagno decision, the intervener, and then two more pensions were paid to Ross and McCarthy, inclusive of the pickups. And then the intervener came into this and said, there's an issue here. There's an issue with reentry. The pension board disagreed. There's an issue with salary attached to rank. And the pension board looked at the decision that was issued in the trial court and said, there are legitimate issues with this decision. I mean, the trial court held that it was fixed annual periodical payment depending upon the time of employment and not services being rendered. I mean, the whole definition of salary for pension purposes is that it's salary for services rendered. So that immediately called into question the trial court's decision. The trial court focused on the fact that it was a reimbursement as taxable income. The trial court acknowledged that this is a reimbursement. I mean, the plaintiff argues this is not a reimbursement. They call it a wage. They call it a wage. They can call it a wage all day long, but simply because a municipality calls something a wage, that does not make it salary for pension purposes. And if a municipality could do that, just say we're going to pay it as a wage or call it a wage, they could take all types of non-salary compensation and turn it into pensionable salary. They could say, okay, you have to pay $1,200 a year for your cell phone. Tell you what, we're going to pay you dollar for dollar as wages, that $1,200 and take pension contributions out of it. That would make a cell phone reimbursement pensionable salary under the plaintiff's argument. And the courts have never gone that far to argue that the legislature intended that a municipality can deem something a wage or deem it salary. Would it also make it taxable? Would it also make it a pension contribution would have to be made upon it? Right. Pension contribution would have to be taken out of it, but a pension contribution does not get taken out of something that's not pensionable salary. But it did in this case. It did in this case erroneously by the village and the plaintiff would be entitled to a refund of that contribution. And taxes were paid on the amount of money that the pickup was for, correct? Sure. Taxes were paid, but I don't think any party disputes it simply because something's taxed, it becomes salary for pension purposes. The government's going to get its pound of flesh one way or the other. And the pension is set up, the city decides what these people are going to be paid and what they're going to call their compensation. So the city gets to determine what they get paid as compensation, but under the Sedlock case, it's specifically the province of the pension board to determine what constitutes salary attached to rank for pension purposes. There's a difference between compensation as dictated by the village and salary for pension purposes, which is the province of the pension board. Any additional questions? Not by me. All right. The court thanks both sides for spirited argument. We will take the matter under advisement and render a decision in due course.